Marvin, J.
This case is brought to reverse the judgment of the court of common pleas.
*155 The facts are that Osman Card had a policy of insurance in the insurance company named; that while that was in force he died on the 10th day of August, 1892; that his death was occasioned by his falling out of a window of a hotel in St. Louis, Michigan.
One of the conditions of the policy issued to him was contained in the words which I will read:
“Immediate written notice of accident must be given to the company's,secretary. Failure to give such notice shall invalidate all claims under this insurance. Positive proof of accidental death or loss of limb must be furnished within six months from the date of the accident. ”
In this case no notice was served upon the company at all until as late as the 22nd of December next after the death of Mr. Card. Indeed, it reached the company later than that; it was written and mailed on that day. And it was brought about that on that day, the 22nd of December, Mrs. Card, who was plaintiff below,as administratrix of the estate of her husband, received a written notice from the company that a premium was due upon the policy. Until that time she had no knowledge that such a policy was ever issued. Receiving that notice, she went immediately to Mr. Flick, who was a general agent of the company at Cleveland, and after talking with him started for the office of Col. Winship, as her attorney. Failing to meet him, she met Judge Neff, who was then practicing law in Cleveland-, and he wrote to the company, his letter reading:
“Cleveland, O., December 22, 1892. “The American Accident Company:
“Mr. Osman Card has, recently died from the effects of an accident. His widow desires me to request you to forward to my address all blanks necessary for making proofs of death. The number of policy is 10,651, Class A. Awaiting your reply, I remain
“Very Tespectfully yours,
W B. Nekf."
*156 And this letter, as I have said, was the first notice that the company received. Mr. Flick testifies that he thinks he had heard of his death before that time; but however that may be, we do not think that was a notice to the company, such as is required; I mean any notice that Mr. Flick had received. I have already read the provision requiring immediate notice to be given, and the first question raised in this case is as to whether, as matter of law, the court should have held and instructed the jury that this was not an immediate notice under the terms of the policy.
I ought, perhaps, to add, that Mrs. Card- — -I have.already said that she knew nothing of the existence of the policy- — - examined the papers of her deceased husband, so far as she knew where they were, shortly after his death. This policy was not among those papers. She was not seeking for this policy especially,for she had no knowledge of its existence. The policy was not found by anybody until long after this suit was commenced; it was then found in the safe of Mr. T. H. Atkinson, who had an office in the same building, I believe, upon the same floor with Mr. Card. Mr. Atkinson has no knowledge as to how it came to be in his safe. Mr. Card had a box in a safety deposit vault in the city, but it was not there.
I come now to consider the question of whether, under the circumstances, this notice was “immediate”. Our attention is called to a case of Trask v. The Insurance Co., in 29 Pa. St. Rep., 198. That was a fire policy. There was a provision in that policy that in case of fire immediate notice should be given to the company. The property was destroyed by fire on the 2nd of May, 1851. Notice was sent on the 13th of May. No excuse was given for such delay, and the court in that case held that under the circumstances of the case the notice was not immediate. The first clause of the syllabus I have not before me, but the substance of that is, that without, a reasonable excuse being given for such delay, the lapse of time between the 2nd of May and *157 the 13th was so great as to make it a failure to comply with the conditions, as a matter of law.
The case of Edwards v. The Ins. Co., 75 Pa. 378, is a -case upon a fire policy, and the notice was required to be given forthwith. The fire destroyed the property on the 30th of September, 1858. Notice was sent on the 18th of October of the same year; no excuse,in that case, was given no reason that could be any good reason for the delay: and the court held in that case that as matter of law, the condition had not been complied with. The first clause of the syllabus in that case states that as a proposition, and in the opinion of the court, found on page 380, this language is used:
“This rule of the company should receive a reasonable interpretation to mean as requiring due diligence under all the circumstances; that there should be no laches or unreasonable delay,and in that respect Trask v. Ins.Co.,”' — to which I have already referred in 29 Pa.,' — “seems to have been somewhat harsh. This case, however, has not the same extenuating circumstances, and we must abide by the ruling in that case. ”
So that this was a case where there were no extenuating ■circumstances, and the court say that the rule may have been harsh in the other case.
In the case of Wood v. Ins. Co., 133 N. Y., 394, the language of the policy, or the condition-of the policy was: “Notice should be given forthwith.” The fire occurred on the 4th of February, 1882. No notice was ever given, but the proofs of loss were filed about the 23rd of February, of the same year. And in that case the court did not hold that the notice, as matter of law, was not given in time. It is true that the reason why the case was decided as it was, and the assured permitted to recover, was that there was a waiver as to time in the matter of proof of loss; but there is no holding that as matter of law the lapse of time before notice was a failure to comply with the conditions.
*158 The case of Ermentrout et al. v. Ins. Co., 65 N. W. Reporter, 635, is a Minnesota case, a3 I remember, and the condition there was that immediate notice should be given. The fire occurred on the 12th of August. The notice was given on the 9th of October. There it was held, as a matter of law, that the company was released. By reading that case it is apparent that there was no reasonable excuse for that delay. The facts of the case are such that there was no reason why that notice could not have been given long be. fore; and we think that case is not one that would necessarily hold that the notice in this case, as matter of law, was not in compliance 'with the terms of the policy.
The case of Gamble v. The Accident Assurance Co., 4 Irish Com. Law Reports, 204, was a case of an accident policy, and the notice was required to be given within seven days after the accident. That is an exhaustive case, and is quoted from very largely in the brief in this case. And it was held in that case to be a condition precedent to any recovery that the notice should be given within seven days. The accident in that case resulted in immediate death. It is urged that nobody knew of the situation, so as to give the notice. Indeed, the arguments were made, it seems to me, all that could be made there, that the condition ought not to be enforced legally. The court held it must be enforced, and went on to give reasons why it' should be — -the parties should be held strictly to the conditions. It will be observed in that case that fixed time was given within which notice should be served upon the company. The party, as the court said, need not have made that contract, and the party assured could have provided, could have made such provision that somebody would see to it that that notice was given. We think the authorities in this country, where the notice is to be given immediately or forthwith-, are not, however, such as to justify saying that a lapse of the same period of time that is named here, or of a longer period, *159 would, as a matter of law, be a' breach of that condition. I have quoted from the Supreme Court of Pennsylvania, where it is said that the condition must have a reasonable construction — I have only quoted from one where that language is used, but it is found, in a large number of cases —and a reasonable construction under all the circumstances.
It is said here that the circumstances are such as to afford no reasonable excuse, because this policy was issued to Mr. Card,and the personal representative of Mr. Card would be the one to collect from the insurance company, and it differs from a case where the beneficiary would be an outside party, somebody other than the personal representative; but that what would be negligence on the part of the deceased would be negligence on the part of the representative; that is to say, if the deceased was negligent in caring for the policy and seeing that somebody knew about it, then it would be negligence to be imputed to the administrator, for the administrators right would only be the right of the deceased.
But it seems to us that that cannot quite be said, or, rather that, as applied to this case, that would not necessarily work out what is right. We can well conceive a case where one might leave in his desk, or in his safe, full directions as to where documents were, and the like, but that seven, more than ten, more than twenty days might elapse before an administrator was appointed. It might not be known that it was necessary to appoint an administrator. One might die a long way from home, and it would be unseemly, until the body was disposed of, to be seeking for the appointment of an administrator, so that notice might be given. In this case Mr. Card may be said to have been negligent that he did not notify somebody about that policy; and yet I apprehend that there are a great many men who are reasonably careful in their business, who have never notified anybody *160 about all their insurance or where their policies can be found.
A case was decided in November of this year, by the Superior Court of Cincinnati, in Crane & Co. v. Standard Life & Accident Insurance Co. 3 Nisi Prius Reports 318, Judge Hunt delivering the opinion, and it was concurred in by all the judges, where a policy of insurance was issued by the company to a manufacturing concern, by which the insurance company undertook to protect or indemnify a manufacturing concern against liability on account of the injuries that should be suffered by employes of the manufacturing establishment. In that case there was a provision that the insurance company should receive “immediate” notice of accidents. The party who brought the suit was injured on the 13th day of July, 1893. No notice was served upon the company until the 17th day of November. The Superior Court of Cincinnati,in General Term, held that it was proper to leave to the jury the question of whether, under the circumstances of that case, the condition had been complied with; and in the opinion of a large number of authorities are cited in support of the position taken by the court. Among them is the case of Lyon v. The Assurance Co., 46 Iowa, 631. There an injury occurred on the 27th of September, 1875. The provision of the policy was that the notice must be immediate. Notice was served on the 28th of October. The Supreme Court of Iowa held that it was properly left to the jury to determine whether the condition had been complied with. The language of the syllabus, third clause, reads:
“What is a sufficient compliance with the condition of the policy requiring immediate notice, is a question of fact to be determined by the jury.”
To the same effect is the case of Carpenter et al. v. German-American Ins. Co., 31 N. E. Rep., 1015. That case is a case decided by the Court of Appeals of New York. It *161 is a fire policy. The fire occurred on the 10th of October, 1883; the proofs were not made until the 2nd of February, 1884; and yet the condition read that in the case of loss, “the assured shall give immediate notice thereof, and shall render to the company a particular account of said loss, under oath.” The court, said, as matter of law, that the 115 days that elapsed between that fire and the furnishing of the evidence to the company — that it was not, as matter of law, a failure to comply. And a fair interpretation of that language, I apprehend, is that the assured should not only give immediate notice, but should immediately furnish a particular account of the loss. The court said that it was a question of fact for the jury, as to whether that was complied with.
In this case the court submitted to the jury the question of whether that condition had been complied with, and we think there was no error in that submission,
The further question is raised that proofs of death were not furnished, Without stopping to go into details of what transpired in the way of correspondence, we call attention to the fact that on the 23rd day of January, 1893, Mrs. Card made an affidavit, in which she stated that her husband met with an accidental death on the 10th day of August, 1892, by falling from a window of a hotel at St. Louis, Michigan. On the same day, Judge Neff made an affidavit that he kne.w of the death, and a-clergyman made an affidavit that he attended the funeral, and an undertaker made an affidavit, or at least a certificate. Of course,none of these parties, other than Mrs. Card, knew of the circumstances of the death. ¡¡Mrs. Card’s affidavit gave no other details than that he died by falling from a window of his hotel. The court charged the jury that the condition as to proof was complied with, if affidavits were filedjshowing in general the manner of the death. It is urged that that is too indefinite. But we think the fair understanding of what was *162 the accident was sufficient; that it was not necessary to enter into every detail- — whether in falling he struck his head upon the coping of some window underneath, or whether he struck his head upon a stone when he fell upon the ground, or the like. And we think that the court properly charged the jury in that regard.
John O. Winship, for Defendant in Error.
S. E. Williamson, for Plaintiff in Error.
The court was asked to say to the jury that, there was.no waiver on the part of the company of the proper proofs of death. It does not appear that the court gave it, and we treat it as though it affirmatively appeared that the court did not give it. I know one or two items in the record where that does not appear. The court, on pages 71 and 72 of this record, states to the jury what issues they, are to pass upon, and the first one that the court states is: Was immediate notice given ? Second — Were proofs furnished within six months? And,, then, third — Was suit brought within three months after the proofs were furnished ? I ought to say that one of the provisions is, that suit shall not be brought until three months had elapsed after the proofs were furnished.
The court, in its instructions to the jury', nowhere intimate that there was any waiver, or that the plaintiff below could recover, unless she established that she had complied with the condition by giving immediate notice under all the circumstances, and had complied with the condition requiring proofs, and with.the condition of not bringing suit until three months after the proofs were furnished.
So we think that the court did not err in declining to give that charge, because there had been nowhere, so far as it appears in the record, any intimation by the court that they might find that there had been any waiver. Upon the record we are satisfied that there was no error that would justify a, reversal, and the judgment of the court of common pleas is affirmed.